[Cite as *In re Tr.T.*, 2018-Ohio-2126.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106107**

**IN RE: Tr.T., ET AL.**
**Minor Children**

[Appeal By Father]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 14907758, AD-14907759, and AD-14907760

**BEFORE:** S. Gallagher, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 31, 2018

**ATTORNEYS FOR APPELLANT**

Kelly Zacharias
5546 Pearl Road
Parma, Ohio   44129

Michael S. Weiss
602 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE, C.C.D.C.F.S.**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Rachel V. Eisenberg
Assistant Prosecuting Attorney
C.C.D.C.F.S.
3955 Euclid Avenue
Cleveland, Ohio   44115

BY: Cheryl Rice
Assistant Prosecuting Attorney
C.C.D.C.F.S.
8111 Quincy Avenue, Room 440
Cleveland, Ohio   44104

**Also listed:**

**Guardian ad litem**

Anna Markovich
18975 Villaview Road, #3
Cleveland, Ohio   44119

**For Mother**

W.T., pro se
7911 Pinegrove Avenue
Parma, Ohio   44129

SEAN C. GALLAGHER, J.:

{¶1} Appellant Father appeals from the orders awarding permanent custody of his three children, Tr.T., Te.T., and Th.T. (collectively "the children"), to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Upon review, we affirm.

{¶2} On June 17, 2014, CCDCFS filed a complaint for neglect and temporary custody of the children. CCDCFS alleged, among other allegations, that both Father and Mother, T.W., suffered substance abuse problems, that neither was providing appropriate care for the children, that Mother's whereabouts were unknown, and that Father was unable to provide for the children's basic needs. On September 3, 2014, the trial court adjudicated each child as neglected, terminated emergency temporary custody to Father, and committed the children to the emergency custody of CCDCFS. On October 14, 2014, the trial court granted temporary custody to CCDCFS.

{¶3} The children were placed in a foster-to-adopt home in Toledo, Ohio. On April 1, 2015, CCDCFS filed a motion to modify temporary custody to permanent custody. The motion was held in abeyance, and two extensions of temporary custody were granted.

{¶4} During the course of the proceedings, Father engaged in case plan services and was provided visitation with the children. Case plan objectives included substance abuse treatment, parenting, basic needs, medical, and housing. Mother did not participate in the proceedings or engage in case plan services.

{¶5} In August 2015, the trial court assigned a new social worker to the case. By August 2016, Father was continuing to make progress on his case plan; he had attained housing and was

allowed to begin overnight visits with the children. Father had not obtained meaningful employment.

{¶6} On August 31, 2016, CCDCFS filed a motion to terminate temporary custody with legal custody to Father and an order of protective supervision. However, on October 27, 2016, CCDCFS filed an emergency motion to modify visitation of Father from unsupervised at his home to supervised by CCDCFS. Father had tested positive for cocaine and marijuana. It was also reported that Father was allowing Mother to have unsupervised visits with the children, which was in direct defiance of court orders, and that Father had not fulfilled the children's basic needs in the home. The trial court suspended overnight visitation with Father and ordered Father to submit to random urine screenings. Father did not attend the urine screenings and asserted a lack of transportation. The trial court ordered that transportation be provided.

{¶7} On April 28, 2017, Father filed a motion to terminate temporary custody and for legal custody to Father or in the alternative to his sister, either as sole legal custodian or for shared parenting custody with Father.

{¶8} Trial was held on May 9, 2017. Evidence was presented that the children had been removed from the home on September 3, 2014, and that CCDCFS received temporary custody of the children on October 14, 2014. Although Father had provided the names of a relative and a friend for placement, the record reflects neither was a suitable placement. The children were placed in a foster home in Toledo, Ohio. Although the children were placed in Toledo, they were brought in regularly for visitation.

{¶9} At the time of the trial, the children had been in the temporary custody of CCDCFS for over two and one-half years. Mother did not participate in the proceedings and was found to have abandoned the children.

{¶10} Although Father completed substance abuse treatment, Father's compliance with requested urine screenings was sporadic. In September 2016, he tested positive for marijuana and cocaine. In October 2016, he tested positive for marijuana. He did not submit to screens again until March 2017, when he tested positive for marijuana and cocaine. He admitted using marijuana, but not cocaine.

{¶11} Father had completed parenting classes, but he did not successfully demonstrate parenting skills and was not always consistent with visitation. He had continued substance abuse issues. His sister, who was willing to be a co-parent with Father, admitted Father needed substance abuse treatment. Also, Father had allowed Mother to be alone with the children, which was a violation of a court order prohibiting Mother from having unsupervised contact with the children.

{¶12} Father failed to establish sobriety, consistent employment, or an ability to meet the children's basic needs. CCDCFS assisted Father in attaining housing in 2016. Father had not demonstrated meaningful employment or provided any verified income. Also, Father had failed to financially support the minor children. The record reflects CCDCFS made referrals for substance abuse, drug screens, and employment, and provided Father's rental deposit.

{¶13} The guardian ad litem recommended permanent custody to CCDCFS. The guardian ad litem noted in her report that Father had plenty of time to meet the objectives of his case plan, yet he failed to demonstrate an ability to meet and a commitment to the children's basic needs and to provide a safe and secure environment for them. The guardian ad litem did not recommend legal custody to Father or the two relatives that testified. Neither relative had established a relationship with the children, and Father's cousin never filed a motion for legal custody.

{¶14} The children have been residing together in the foster-to-adopt home, are well-bonded with their foster family, and their basic needs are being met in the foster home.

{¶15} The trial court issued a journal entry, journalized July 11, 2017, that briefly summarized the testimony presented. Thereafter, the trial court issued a journal entry for each child, journalized July 12, 2017, that granted permanent custody to CCDCFS and terminated the parental rights of Mother and Father. Father timely filed this appeal.

{¶16} Father raises three assignments of error. Under his first assignment of error, Father challenges the denial of his motion for legal custody to his sister. He claims two of the paternal aunts were willing to take the children, had stable housing, and would have been suitable for placement had CCDCFS conducted an appropriate investigation. Under his second assignment of error, Father claims that CCDCFS failed to attempt to preserve the family unit by placing the children in a foster home in Toledo. He asserts that had the children been placed in a local foster home, visitation with Father and the children's extended family would have been more accessible. He questions the efforts of CCDCFS to assist the family in remedying the conditions that caused the removal of the children.

{¶17} Although R.C. 2151.412(H)(2) instructs the trial court to prioritize placing children in the legal custody of "a suitable member of the child's extended family" when developing case plans, there is no such requirement in permanent custody determinations. *In re J.F.*, 8th Dist. Cuyahoga No. 105504, 2018-Ohio-96, ¶ 41, citing *In re A.D.*, 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, ¶ 12. Further, Father cannot challenge the failure to award legal custody to a relative in this matter; rather, his challenge is limited to whether the court's decision to terminate parental rights was proper. *See In re J.F.* at ¶ 42.

{¶18} Regardless, we find nothing in the record to support Father's position. The record demonstrates that the agency complied with Ohio Adm.Code 5101:2-42-05(E)(1) by selecting a substitute care setting that "[i]s considered the least restrictive, most family-like setting available to meet the child[ren]'s emotional and physical needs." *See In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733. Although Ohio Adm.Code 5101:2-42-05(F) lists the home of a suitable relative as the least restrictive setting for a substitute care setting while an agency has temporary custody, a foster home is on the list of least restrictive placements if there is no suitable relative or nonrelative with whom to place the child. The record reflects that Father had provided the names of a relative and a friend for placement. He did not provide the names of any additional relatives. CCDCFS investigated Father's requests for placement, but found none suitable for the children, which is supported by the record. The record also reflects that although the children were placed in a foster home in Toledo, the children were brought to Father's home for visitations and his visitations were not hindered by the placement. The record reflects the only time visitations did not occur regularly was when Father was not consistent with his visitation. Further, the paternal aunts did not visit with the children during father's visitation to establish a relationship with the children.

{¶19} Insofar as legal custody to a paternal aunt was requested, as this court has stated, "[t]he willingness of a relative to care for a child does not alter what a court considers in determining whether to grant permanent custody. * * * If permanent custody to CCDCFS is in [the child's] best interest, legal custody to [a relative] necessarily is not." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 60, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 11. In deciding what is in a child's best interest in a permanent custody proceeding, the trial court need not find by clear and convincing

evidence that termination of parental rights is the only option or that no suitable relative is available for placement. *In re V.C.* at ¶ 61, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. Rather, R.C. 2151.414 requires the court to find the best option for the child upon a weighing of all the relevant factors. *In re Schaefer* at ¶ 63. "The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.* Accordingly, Father's challenge to the trial court's judgment granting CCDCFS permanent custody is limited to whether the trial court improperly terminated his parental rights.

{¶20} We shall proceed to review the trial court's judgment awarding CCDCFS permanent custody and terminating Father's parental rights.

{¶21} A trial court's decision in a custody proceeding will not be reversed absent a showing of abuse of discretion. *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, at ¶ 27. R.C. 2151.414(B) allows a court to grant permanent custody of a child to a children services agency if, after a hearing, the court determines, by clear and convincing evidence, that permanent custody is in the best interest of the child and that any of the four conditions set forth in R.C. 2151.414(B)(1)(a)-(e) applies.

{¶22} The trial court found that the condition under R.C. 2151.414(B)(1)(d) was met because the children had been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period. The record supports this finding. If any of the conditions outlined in R.C. 2151.414(B)(1)(a)-(e) exists, the trial court may proceed to consider whether the grant of permanent custody to the agency is in the best interest of the child. *In re J.G.*, 8th Dist. Cuyahoga No. 100681, 2014-Ohio-2652, ¶ 44.

**{¶23}** In conducting a best-interest analysis under R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶ 56.

**{¶24}** In determining the best interest of a child, R.C. 2151.414(D)(1) directs the trial court to consider "all relevant factors," including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e). A juvenile court does not abuse its discretion if its decision regarding the children's best interest is supported by competent, credible evidence. *In re R.T.*, 2016-Ohio-8490, 79 N.E.3d 138, ¶ 57 (8th Dist.).

**{¶25}** Here, the trial court's opinion demonstrates that it considered the factors in R.C. 2151.414(D) and found by clear and convincing evidence that an order of permanent custody is in the best interest of the children. The trial court considered the interactions and interrelationships of the children and found that "Father has been somewhat consistent with parenting time, though has struggled with basic needs and sobriety" and that "Mother abandoned the minor child[ren]." The trial court met in camera with the oldest child and considered the wishes of the minor children as articulated through the guardian ad litem. The trial court considered the custodial history of the children and the length of time they had been in the

temporary custody of CCDCFS, which was over two and one-half years. The trial court recognized the children's need for a legally secure placement and found permanency could not be achieved without a grant of permanent custody to CCDCFS because Mother and Father were unable to remedy the conditions that precipitated the removal of the children, Mother did not participate in the proceedings, and Father had been unable to meet the children's basic needs.

{¶26} The trial court further considered R.C. 2151.414(E) and found the children could not be placed with a parent within a reasonable period of time. The court indicated Mother had abandoned the children, did not participate in the proceedings, and did not engage in case plan services. The court indicated Father had failed to successfully complete case plan objectives for substance abuse and basic needs, and recognized his continued struggle with illegal substances despite having completed substance abuse treatment. The court also indicated that Father had been inconsistent with parenting time, that CCDCFS had suspended his parenting time during the course of the case, that he had failed to financially support the children, and that he had shown an inability to parent the minor children.

{¶27} The trial court also considered the report and testimony of the guardian ad litem, who recommended permanent custody to CCDCFS as being in the best interest of the children.

{¶28} Upon considering the testimony and evidence submitted, the trial court determined by clear and convincing evidence that a grant of permanent custody to CCDCFS would be in the best interest of the children. Upon our review of the record, we find there is competent, credible evidence supporting the trial court's best-interest determination.

{¶29} There is no question that a parent has an "essential" and "basic civil right" to raise his or her child and a "fundamental liberty interest" in the care, custody, and management of his or her own child. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). However,

the natural rights of a parent are not absolute, and are subordinate to the child's best interest when determining the appropriate resolution in a permanent custody proceeding. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20. Thus, the child's best interest is the "'polestar or controlling principle'" that is to be observed. *Id*. quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

**{¶30}** Under his third assignment of error, Father challenges whether CCDCFS made reasonable efforts to prevent the removal of the children. The Supreme Court of Ohio has held that the reasonable-efforts requirement set forth in R.C. 2151.419 does not apply to motions for permanent custody or hearings on such motions. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41, citing *In re A.C.*, 12th Dist. Clermont No. CA2004-05-041, 2004-Ohio-5531, ¶ 30. However, the state must, unless certain statutory exceptions apply, "still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights." *In re C.F.* at ¶ 43. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id*.

**{¶31}** Here, the record demonstrates that the trial court made reasonable-efforts findings at the time the children were adjudicated neglected and committed to the temporary custody of CCDCFS on October 14, 2014. The court magistrate found CCDCFS made reasonable efforts including parenting education classes, substance abuse assessment and treatment, and basic needs. It was also found that Father had failed to complete the services.

**{¶32}** In its decision to grant permanent custody to CCDCFS, the trial court again concluded CCDCFS had made reasonable efforts and provided relevant services including

substance abuse treatment, housing, parenting, and basic needs. The court found those services were not successful and neither parent had completed case plan services.

{¶33} The record reflects that CCDCFS made referrals to Father to engage in substance abuse treatment, drug screens, and employment. Also, CCDCFS provided the rental deposit for Father's housing. Although Father complains about the social workers that were assigned to the case, the record contains ample evidence to support the trial court's determination that CCDCFS made reasonable efforts in this case.

{¶34} We recognize that Father made some efforts to engage in case plan services and is bonded to the children. However, the record demonstrates that Father failed to maintain sobriety, he demonstrated poor decision-making by leaving the children alone with their mother when she was not allowed to have unsupervised visits, he failed to maintain consistent employment, and he failed to meet the children's basic needs.

{¶35} We reiterate that it is the best interest of a child that is the pivotal factor in a permanency case, and that neglected and/or dependent children are entitled to a stable, secure, nurturing, and permanent home in the near term. *In re N.B.*, 8th Dist. Cuyahoga No. 105028, 2017-Ohio-1376, ¶ 30. Our review of the record shows that the trial court's determination as to each child is supported by clear and convincing evidence and is not against the manifest weight of the evidence in the record. We overrule the assignment of error and affirm the trial court's decisions awarding permanent custody of each child to CCDCFS and terminating Father's parental rights.

{¶36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.      A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
TIM McCORMACK, J., CONCUR