OPINION
{¶ 1} Appellant, Scott Hurst, appeals from a decision of the Clermont County Common Pleas Court, Juvenile Division, granting permanent custody of his son, A.C., to appellee, the Clermont County Department of Job and Family Services ("CCDJFS" or "the agency").
 {¶ 2} A.C. was born prematurely on November 3, 2001, weighing approximately two pounds and four ounces. He was in respiratory distress and required a ventilator to breathe. He spent six days in a neonatal intensive care unit and remained in the hospital for six weeks after that before being released. When A.C. was due to be released from the hospital, CCDJFS filed a complaint in the Juvenile Division of the Clermont County Common Pleas Court on December 21, 2001, alleging that A.C. was a dependent child and requesting that it be awarded temporary custody of him. The trial court awarded CCDJFS predispositional interim custody of A.C. and scheduled a hearing on the matter for January 2002.
 {¶ 3} A.C. was placed in a foster-to-adopt home. His foster mother, identified in the record only as "Michelle," is a state tested nurse's assistant and medical assistant, and has completed six months of training as a licensed practical nurse. A.C. was placed with Michelle and her husband because of her training and because of A.C.'s ongoing special needs. A.C. had an umbilical hernia, undescended testicles and hypersensitive gag disorder, and was susceptible to colds and virus. Approximately one year after he was born, A.C. was diagnosed with cerebral palsy. He has to wear leg braces with cables. Because he is so young, it will take several years to determine the full extent of his disabilities.
 {¶ 4} On January 8, 2002, A.C.'s biological mother, Felicia Chitwood, and the man who Chitwood initially identified as A.C.'s father, Jimmy Phillips, agreed to a finding that A.C. was dependent and that he could be placed in CCDJFS's temporary custody. Thereafter, Chitwood and Phillips executed a permanent surrender of A.C., which was approved by the trial court on January 25, 2002.
 {¶ 5} Chitwood informed CCDJFS that there were two men who could possibly be A.C.'s biological father. The first was Phillips; however, subsequent paternity testing excluded him as A.C.'s biological father. The second was appellant. The agency tried to contact him at an address Chitwood gave them, but it could not reach appellant there.
 {¶ 6} On December 5, 2002, CCDJFS filed a motion requesting that it be granted permanent custody of A.C. On December 17, 2002, a pre-trial/dispositional review hearing was held. Appellant appeared at this hearing after having been served with notice by certified mail. Genetic testing was performed on appellant. A parentage evaluation laboratory report, dated January 23, 2003, stated that appellant could not be excluded as A.C.'s biological father. On March 17, 2003, appellant filed a motion requesting visitation with A.C. The motion was denied at a pre-trial hearing on April 1, 2003. On April 24, 2003, an entry was filed wherein appellant acknowledged that he was A.C.'s natural father.
 {¶ 7} A trial was held on the motion for permanent custody over three days in June, July and August of 2003. The magistrate issued a decision finding that A.C. had been placed in CCDJFS's custody for 12 or more months of a consecutive 22-month period ending on or about March 18, 1999, and that it was in the best interest to award CCDJFS permanent custody of A.C. Appellant filed objections to the magistrate's decision, which were overruled.
 {¶ 8} Appellant now appeals raising three assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "The trial court abused its discretion in awarding permanent custody to CCDJFS because the trial court's factual determinations do not support the conclusion that it was in the best interest of [A.C.] to be permanently placed with CCDJFS, instead of his natural father."
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "The Juvenile court erred in awarding permanent custody to CCDJFS because its determination that placing [A.C.] with [appellant] would involve a transition period of unknown duration was not supported by clear and convincing evidence."
 {¶ 13} Because these assignments of error raise similar issues, we shall address them together. Appellant argues that the trial court erred in adopting the magistrate's decision because CCDJFS failed to present clear and convincing evidence that it was in A.C.'s best interest to grant them permanent custody. He further argues that the magistrate abused its discretion by refusing to grant him visitation with A.C. to allow him to bond with him. We disagree with these arguments.
 {¶ 14} A juvenile court may grant a public children services agency permanent custody of a child if it determines, by clear and convincing evidence, that it is in the child's best interest and that one of the four circumstances listed in R.C.2151.414(B)(1)(a)-(d) exists. R.C. 2151.414(B). Appellant concedes that A.C. has been in CCDJFS's temporary custody "for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1)(d). Therefore, the only question in dispute in this case was whether it was in A.C.'s best interest to grant CCDJFS permanent custody of him.
 {¶ 15} R.C. 2151.414(D) states in relevant part:
 {¶ 16} "In determining the best interest of a child * * *, the court must consider all relevant factors, including, but not limited to, the following:
 {¶ 17} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 18} "* * *
 {¶ 19} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 20} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
 {¶ 21} In this case, there was evidence presented that was favorable to appellant. The magistrate found, and there is evidence to support, that appellant has a "keen desire" to be a father to A.C. and to provide for him, and that the desire to provide for A.C. is shared by appellant's family. Appellant substantially complied with the case plan that was set out for him by CCDJFS. A psychologist hired by appellant concluded that appellant was psychologically, emotionally and intellectually fit to parent A.C. However, when the evidence is examined in its totality, we conclude that there was clear and convincing evidence to support a determination that it was in A.C.'s best interest to grant CCDJFS permanent custody of him.
 {¶ 22} Appellant is 30 years old, yet still lives with his parents. He dropped out of high school after the 11th grade; he plans on obtaining his GED, but has not yet done so. He currently works for a builder, a position he has held only for approximately a month and a half. He was discharged for cause from his two previous jobs. He was convicted of possessing marijuana in 1998 and driving under the influence in 2000. He plans to have his mother provide day care for A.C. when he is away at work, but his mother already provides day care for three of her other grandchildren, one of whom was only nine months old at the time of the hearing.
 {¶ 23} Examining the specific factors enumerated in R.C.2151.414(D), it is apparent from the evidence that A.C. has bonded with his foster family, which includes a ten-year-old girl who is now A.C.'s sister. A.C. has known no other family or home. His foster family wants to adopt him. It is further apparent that A.C. has a strong need for a "legally secure permanent placement," particularly, in light of his special needs. Moreover, both appellant and his expert psychologist acknowledged that there would have to be a transition period before appellant could gain custody of A.C.; however, neither were able to give any estimate about how long this transition period would last.
 {¶ 24} Appellant also argues that the trial court abused its discretion by not allowing him to visit with A.C. to allow them to establish a bond. We disagree with this argument. As appellant himself acknowledges, trial courts have broad discretion in matters involving the visitation rights of a noncustodial parent.Appleby v. Appleby (1986), 24 Ohio St.3d 39, 41. In this case, CCDJDS sought permanent custody only after A.C. had been in their custody for more than a year after he had been born. It was not an abuse of discretion to hold the hearing on the agency's motion for permanent custody before arranging any visitation between appellant and A.C., in order to determine whether it was appropriate to grant CCDJFS permanent custody of A.C. or to attempt to unify appellant with A.C.
 {¶ 25} Appellant also challenges the trial court's decision on the grounds that the case plan the agency gave him called upon him to visit with A.C. CCDJFS acknowledged that, initially, there was a miscommunication between it and the prosecutor's office about whether to attempt to unify appellant and A.C. or to simply attempt to gain permanent custody of him. However, it is clear that appellant was not prejudiced by this initial confusion. CCDJFS informed him at an early stage in the proceedings that they were going to attempt to obtain permanent custody of A.C.
 {¶ 26} Appellant, in an apparent attempt to explain his absence during the first year of A.C.'s life, alleges that A.C.'s natural mother told him that she was pregnant, but claims that he did not believe he was the father because of her promiscuity. But the record shows that appellant did very little, if anything, to determine if he was actually A.C.'s father until he was notified of CCDJFS's desire to obtain permanent custody of A.C. Under these circumstances, there was ample evidence to support the trial court's decision to terminate appellant's parental rights, and grant custody of A.C. to CCDJFS.
 {¶ 27} Appellant's first and second assignments of error are overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "The trial court erred in awarding permanent custody to CCDJFS because CCDJFS never made reasonable efforts to prevent removal or to make it possible for [A.C.] to return home with his father."
 {¶ 30} Appellant argues that the trial court erred in awarding CCDJFS permanent custody of A.C. because it failed to make "reasonable efforts" to prevent his removal or to make it possible for A.C. to return home with him, as it was required to do under R.C. 2151.419.[1] We disagree with this argument. The "reasonable efforts" requirement of R.C. 2151.419(A)(1) applies to hearings held pursuant to R.C. 2151.28, 2151.31(E),2151.314, 2151.33 or 2151.353.[2] By its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414. Furthermore, this was not a case where it was possible for CCDJFS to prevent A.C.'s removal from appellant's home or to make it possible for A.C. to "return home" with appellant, since A.C. had never been in appellant's home in the first place.
 {¶ 31} Appellant's third assignment of error is overruled.
 {¶ 32} Judgment affirmed.
Powell and Valen, JJ., concur.
[1] {¶ a} R.C. 2151.419 provides, in relevant part, as follows:
{¶ b} "(A)(1) * * * [A]t any hearing held pursuant to section2151.28, division (E) of section 2151.31, or section 2151.314
[2151.31.4], 2151.33, or 2151.353 [2151.35.3] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount."
[2] R.C. 2151.28 provides for adjudicatory hearings for "a delinquent or unruly child or a juvenile traffic offender," or an "abused, neglected, or dependent child[.]" R.C. 2151.28(A)(1) and (2). R.C. 2151.31(E) requires a juvenile court to hold a hearing on the issue of whether probable cause exists to justify the issuance of an "ex parte emergency order for taking a child into custody[.]" R.C. 2151.314 relates to detention and shelter care hearings. R.C. 2151.33 concerns the provision of temporary care and emergency medical treatment for children. And R.C. 2151.353
discusses the.