[Cite as *In re J.L.*, 2025-Ohio-426.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
DEFIANCE COUNTY**

**IN RE:**

          **CASE NO. 4-24-20**

    **J.L.,**

**DEPENDENT CHILD.**          **O P I N I O N**

**[MATTHEW L. - APPELLANT]**
**[PEGGY L. - APPELLANT]**

**Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 35123**

**Judgment Affirmed**

**Date of Decision: February 10, 2025**

**APPEARANCES:**

    *Taylor G. Vance* **for Appellant Matthew L.**

    *Autumn D. Adams* **for Appellant Peggy L.**

    *Joy S. O'Donnell* **for Appellee**

**WALDICK, P.J.**

{¶1} Mother-appellant ("Mother") and father-appellant ("Father") bring this appeal from the June 10, 2024 judgment of the Defiance County Common Pleas Court, Juvenile Division. On appeal, Mother and Father separately argue that the trial court erred by awarding permanent custody of the minor child, J.L., to the Defiance/Paulding Consolidated Department of Job and Family Services ("the Agency"). Mother and Father also argue that the Agency failed to engage in reasonable efforts to support reunification in this matter. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} J.L. was born at "twenty-four weeks" in June of 2021, so she was "very, very early." (Tr. at 23). She weighed just over a pound at birth and she spent the first four months of her life in the NICU with heart and respiratory issues. J.L. still suffers from numerous medical issues and has extensive medical needs.

{¶3} J.L.'s parents are Mother and Father. Both Mother and Father suffer from "mild" intellectual disabilities that leave them functioning at a developmental age between 6 and 7 years old. Both parents also have overall intelligence that falls in the "extremely low" range, with Mother being in the 1st percentile and Father

being in the .3 percentile. Mother and Father both lived with Father's mother and her husband. Mother and Father do not drive and are not employed.

**{¶4}** After being released from the hospital, J.L. continued to struggle. Mother and Father had difficulty with J.L.'s significant feeding needs. J.L's growth and development were slow, and at roughly 11 months old she was hospitalized again and diagnosed as "failure to thrive." After J.L. was released from the hospital this time, J.L. began losing weight again while in Mother and Father's care, leading to yet another hospitalization.

**{¶5}** The Agency became involved in June of 2022 due to a report that J.L. was not being properly fed and she was not receiving proper follow-up medical care. The Agency obtained emergency temporary custody of J.L. and filed a complaint alleging that J.L. was a "dependent child" as defined in R.C. 2151.04(B) and (C). The parents ultimately admitted that J.L. was a dependent child and J.L. was placed in the temporary custody of the Agency. J.L. was placed with a certified foster family.

**{¶6}** The parents then engaged with the case plan, which included, *inter alia*, parenting classes and psychological evaluations. In the psychological evaluations, it was recommended that Mother and Father only have parenting time when someone was available to supervise and intervene.

{¶7} In March of 2024, the Agency filed a motion requesting permanent custody of J.L. Mother and Father filed motions requesting that legal custody be granted to the foster parents so that Mother and Father could have residual rights.

{¶8} A final hearing was held May 21-22, 2024 on the pending motions. Notably, both the CASA and the GAL that had been appointed for J.L. recommended that the trial court grant the Agency's motion for permanent custody.

{¶9} On June 10, 2024, the trial court filed a judgment entry granting the Agency's motion for permanent custody. In its entry, the trial court summarized the evidence and determined that J.L. had been in the temporary custody of the Agency for twelve or more months out of a consecutive twenty-two month period, and that it was in J.L.'s best interests that the Agency be granted permanent custody. Mother and Father both appeal the trial court's judgment. Mother asserts the following assignments of error for our review.

**Mother's First Assignment of Error**

**The Agency never worked towards reunification.**

**Mother's Second Assignment of Error**

**The findings Mother failed to remedy the reasons which caused removal of J.L., and thus permanent custody to the Agency was in her best interest, was** [sic] **against the manifest weight of the evidence presented at trial.**

{¶10} Father asserts the following assignments of error for our review.

**Father's First Assignment of Error**

**The Trial Court erred when it found by clear and convincing evidence granting the Agency permanent custody of the child is in the child's best interest.**

**Father's Second Assignment of Error**

**The Trial Court erred in finding that the Agency made reasonable efforts to reunify the family.**

{¶11} Mother and Father's assignments of error that address the same issues will be addressed together.

*Mother's Second Assignment of Error; Father's First Assignment of Error*

{¶12} In Mother's second assignment of error, she argues that she had completed the case plan and remedied all the issues that had caused J.L.'s removal. Father also argues that he had substantially completed the case plan and had substantially remedied the conditions that led to J.L.'s removal. Both parents contend that the trial court's decision to grant the Agency's motion for permanent custody was not supported by clear and convincing evidence, and that the decision was against the manifest weight of the evidence.

Standard of Review

{¶13} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). "Parents have a 'fundamental liberty

interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 2003-Ohio-5885, ¶ 7 (3d Dist.). These rights may be terminated under appropriate circumstances when all due process requirements have been met. *In re Leveck*, 2003-Ohio-1269, ¶ 6 (3d Dist.).

**{¶14}** Revised Code 2151.414 sets forth specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child. *In re C.F.*, 2007-Ohio-1104, ¶ 22. Specifically, there are two separate elements that must be established by clear and convincing evidence: (1) one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) must apply[1]; and (2) granting permanent custody to an agency must be in the child's best interest. R.C. 2151.414(B)(1). If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 2013-Ohio-4317, ¶ 43 (3d Dist.).

**{¶15}** When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost

---

[1] Neither parent is challenging the trial court's determination under the first prong of the permanent custody case. Even if either parent did make such a challenge, the evidence clearly and convincingly established that J.L. was in the temporary custody of the Agency for twelve or more months out of a consecutive twenty-two month period, satisfying R.C. 2151.414(B)(1)(d).

its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

Relevant Authority

**{¶16}** Revised Code 2151.414(D)(1) sets forth a non-exhaustive list of factors the trial court must consider when determining whether granting a permanent custody motion is in the child's best interests. Revised Code 2151.414(D)(1) reads as follows:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.[2]

Analysis

**{¶17}** At the final hearing, the evidence presented was consistent in that Mother and Father were well-meaning but due to their diminished intellectual capacity they could not appropriately parent J.L. without some type of supervision. Undoubtedly Mother and Father improved through the process as they were able to secure their own apartment to live independently and they established a bond with J.L. through supervised visitations. However, Mother and Father never proceeded beyond supervised visitations and they still were having trouble properly feeding J.L. by the time the final hearing occurred. In addition, Mother and Father still relied on another family member for transportation and refused to even consider transportation provided by Medicaid.

**{¶18}** Multiple witnesses testified that they had to consistently remind the parents regarding the importance of J.L. consuming her weight-gaining formula. Multiple witnesses also testified that they had to repeatedly remind Mother and Father regarding safety issues such as choking hazards for J.L., and multiple witnesses testified that Mother and Father regularly missed cues from J.L. This

---

[2] The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

testimony is consistent with the psychological evaluations that indicated Mother and Father would need supervision at least until J.L. could identify and verbalize her own needs.

{¶19} Meanwhile, J.L. was progressing well with her foster family and her foster family indicated that they would like to adopt J.L. Nevertheless, the foster family was not interested in a "legal custody" situation where Mother and Father retained residual rights.

{¶20} After reviewing the record, the trial court determined that the parents had not substantially remedied the conditions that led to the removal of J.L. because they still could not properly feed or care for J.L. on their own. The Trial court stated, "Even though the parents have completed many of the basic case plan goals, they still have not gained the skill and development necessary to meet the needs of [J.L.] to appropriately care for her." (Doc. No. 188).

{¶21} Similarly, the trial court determined that each parent suffered from an intellectual disability of such severity that "it makes each parent unable to provide an adequate permanent home for [J.L.] at the present time or within one year of the hearing held herein." (*Id.*) In sum, the trial court determined that after considering the factors in R.C. 2151.414(D)(1), it was in J.L.'s best interests for the Agency to be granted permanent custody.

{¶22} A review of the factors in R.C. 2151.414(D)(1), and the evidence presented at the final hearing, supports the trial court's determination by clear and

convincing evidence. With regard to factor (a), evidence indicated that J.L. was strongly bonded with her foster family. There was conflicting testimony regarding J.L.'s bond with Mother and Father; however, there was some testimony that a loving bond existed.

{¶23} With regard to factor (b) and the wishes of the child, the child's GAL and the CASA both recommended that the Agency's motion be granted.

{¶24} With regard to factors (c) and (d), J.L. had been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two month period, establishing a strong need for permanency that Mother and Father were unable to provide.

{¶25} With regard to factor (e), the trial court's statement that the parents were still unable to properly feed J.L. without supervision was supported by the testimony.

{¶26} On balance, after reviewing the record, we find that the trial court's determination to award permanent custody of J.L. to the Agency is supported by clear and convincing evidence. At the very least, this is not one of the exceptional cases where the evidence weighs heavily against the result. Thus the trial court's determination was not against the manifest weight of the evidence. Therefore, Mother's second assignment of error, and Father's first assignment of error are overruled.

*Mother's First Assignment of Error; Father's Second Assignment of Error*

**{¶27}** In Mother's first assignment of error, she argues that the Agency never worked toward reunification. In Father's second assignment of error, he argues that the trial court erred by determining that the Agency used reasonable efforts to support reunification.

Relevant Authority

**{¶28}** "[V]arious sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit," most notably R.C. 2151.419. *In re C.F.*, 2007-Ohio-1104, ¶ 29. Revised Code 2151.419(A)(1) requires a trial court to determine whether a children's services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." However, this statute applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children[.]" *In re C.F.* at ¶ 41; *accord In re R.R.*, 2021-Ohio-1620, ¶ 78 (3d Dist.).

**{¶29}** Notably, the Supreme Court of Ohio concluded that " '[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.' " *In re C.F.* at ¶ 41, quoting *In re A.C.*, 2004-Ohio-5531, ¶ 30 (12th Dist.).

Nonetheless, "[t]his does not mean that the agency is relieved of the duty to make reasonable efforts" before seeking permanent custody." *Id.* at ¶ 42. "[If] the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43.

{¶30} In *In re R.R.*, 2021-Ohio-1620, ¶ 79 (3d Dist.), this Court applied the Supreme Court of Ohio's holding in *In re C.F.* and determined that because the trial court previously made reasonable-efforts findings, an agency was not required to prove, nor was the trial court required to find, that the agency used reasonable efforts to reunify parents with their children before the trial court could grant permanent custody to the agency.

Analysis

{¶31} Although the parents argue that the trial court erred by determining in its final judgment entry that the Agency engaged in reasonable efforts to support reunification, the trial court had previously determined that the Agency engaged in reasonable efforts to reunify the family at multiple earlier points in this case. Generally, a children's services agency is required to demonstrate reasonable efforts prior to filing a permanent custody motion, not at the permanent custody hearing, *unless it has failed to do so previously. In re I.C.*, 2023-Ohio-4707, ¶ 58 (3d Dist.), citing *In re S.S.*, 2017-Ohio-2938, ¶ 166-169 (4th Dist.). "Because the trial court

entered a reasonable efforts finding before placing the children in the agency's permanent custody," it was not required to do so again. *See id.*

**{¶32}** Nevertheless, in the interest of justice we will review the parties' arguments, particularly since the trial court made another "reasonable efforts" finding in its final judgment entry. Here, the Agency engaged the parents with a case plan and numerous services were offered to the parents. Potential relative placements were investigated, and no suitable relative placements were found.

**{¶33}** Notably, the parents wanted to operate independently, perhaps to their detriment, as they refused services from the board of DD and the parents refused to contact Medicaid to assist with transportation. Further, the supervised visitation monitors noted numerous issues with the parents and ongoing concerns with the parents' parenting skills. Caseworkers and medical personnel also testified that they spent significantly more time than usual working with the parents in this case.

**{¶34}** When considering reasonable efforts, the issue is not whether there was anything more that the Agency could have done, but whether the case planning and efforts were reasonable and diligent under the circumstances of this case. *In re Leveck,* 2003-Ohio-1269, ¶ 10 (3d Dist.). There is no indication that there is anything more that the Agency could have done to assist the parents in this matter that would have made them understand the importance of the J.L.'s feeding issues. There is also no indication that the Agency could have done anything to overcome

the parents' inherent cognitive limitations. Therefore, Mother's first assignment of error and Father's second assignment of error are overruled.

*Conclusion*

{¶35} Having found no error prejudicial to Mother or Father in the particulars assigned and argued, the assignments of error are overruled and the judgment of the Defiance County Common Pleas Court, Juvenile Division, is affirmed.

**Judgment Affirmed**

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlm**