[Cite as *In re R.H.*, 2026-Ohio-2177.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

## IN RE:  R.H.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 26 HA 0003

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of
Harrison County, Ohio
Case No. 20253032

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Christopher P. Lacich*,  Roth, Blair, for Appellant and

*Atty. Lauren E. Knight*, Harrison County Prosecutor, and *Atty. Jack L. Felgenhauer*, Assistant Prosecuting Attorney, for Appellee.

Dated:  June 10, 2026

**HANNI, J.**

{¶1} Appellant, mother, appeals from a Harrison County Common Pleas Court, Juvenile Division, decision terminating her parental rights as to her child R.H. and granting permanent custody of the child to Appellee, the Harrison County Department of Job and Family Services (the agency). Mother argues the trial court abused its discretion in terminating her parental rights and its decision was against the manifest weight of the evidence. Because the trial court's judgment was not against the manifest weight of the evidence, the court's judgment is affirmed.

{¶2} Mother and father were married in June 2023. Father is a convicted sex offender. Mother gave birth to R.H. (the child) on October 20, 2025.

{¶3} On October 23, 2025, the agency filed a complaint of dependency and motion for ex-parte emergency shelter care. The motion alleged that hospital staff contacted the agency when mother's sister was the one caring for the child after his birth. Hospital staff indicated that mother would not get out of bed for 19 hours after giving birth and mother and father had to be reminded to feed the child. Further investigation revealed that mother has had three children permanently removed from her custody in Wayne County, Ohio. Father is not the biological father of these three children. Additionally, father was convicted in 1997 for rape, gross sexual imposition, and unlawful sexual conduct with a minor. Father was again convicted in 2003 for gross sexual imposition with a victim under age 13. In March 2021, one of mother's children disclosed sexual abuse by father. This led to mother's rights being terminated as to her three children in March 2023. While her appeal was pending, mother married father in June 2023. Mother indicated during the current investigation that she believed the child would be safe because father would not victimize his own child.

{¶4} The trial court granted the motion for emergency shelter care. It then set the matter for an adjudicatory hearing.

{¶5} On November 5, 2025, the agency filed a motion for disposition of permanent custody. It requested that in the event the court adjudicated the child dependent, the court then order a disposition of permanent custody to the agency. The motion asserted the reason for the permanent removal of mother's other three children

was that mother failed to protect them from father, who was then and still is, a registered sex offender due to prior assault/abuse convictions involving children.

**{¶6}** The court next appointed a guardian ad litem (GAL) for the child.

**{¶7}** Mother filed a motion for visitation with the child on December 15, 2025.

**{¶8}** The court held an adjudication hearing on January 12, 2026. It adjudicated the child dependent and set the matter for a disposition hearing. The court also overruled mother's motion for visitation finding that the agency did not have to provide reasonable efforts at reunification given the previous permanent removal of mother's other three children.

**{¶9}** The court held the disposition hearing on March 4, 2026. It heard testimony from the GAL, the social services worker, and mother. Father appeared at the hearing but did not testify.

**{¶10}** The trial court issued its judgment the next day granting permanent custody to the agency and terminating mother's and father's parental rights. The court found that the agency used reasonable efforts to reunify this family; however, the child cannot be reunited with either mother or father within a reasonable amount of time nor are they suitable to parent the child. The court found it in was in the child's best interest to grant his permanent custody to the agency.

**{¶11}** Mother filed a timely notice of appeal on March 30, 2026. Father did not file an appeal.

**{¶12}** Mother now raises a single assignment of error, which states:

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR IN GRANTING HCDJFS' MOTION FOR PERMANENT CUSTODY OF THE MINOR CHILD R.H. FOR THE SAME WAS NOT THE LAST RESORT, NO REASONABLE EFFORT WAS MADE FOR REUNIFICATION, AND THUS THE SAME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.

**{¶13}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' *In re Smith* (1991), 77 Ohio App.3d

1, 16, 601 N.E.2d 45, 54." *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). However, this right is not absolute. *In re Sims*, 2002-Ohio-3458, ¶ 23 (7th Dist.). In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id*.

**{¶14}** Initially, we note the agency first raises an issue with the fact that mother never requested findings of fact and conclusions of law. In spite of this, the trial court issued a judgment that included findings of fact and conclusions of law. The agency now asserts that because mother never requested findings of fact and conclusions of law, she cannot now assert on appeal any error as to these findings of fact and conclusions of law.

**{¶15}** The agency's argument on this point is disingenuous. The trial court held the disposition hearing on March 4, 2026. The court issued its judgment entry containing findings of fact and conclusions of law the very next day (March 5, 2026). Thus, there was no opportunity and no reason for mother to request the same.

**{¶16}** Mother first argues the evidence did not support the trial court's finding that the agency "used reasonable efforts to reunify this family." She asserts she was never given a case plan and no efforts were made to reunify the child with her. She further argues the trial court did not rule on her motion for visitation while this matter was pending.

**{¶17}** On December 15, 2025, mother filed a motion to establish visitation with the child. The trial court held the adjudicatory hearing on January 12, 2026. On January 13, 2026, the court issued its judgment entry adjudicating the child dependent. In this judgment entry, the court specifically "Denies [mother's] Motion to Establish Visitation as [the agency] does not have to provide reasonable efforts toward [mother] due to the previous permanent removal of three of her children." Thus, contrary to mother's assertion, the court did rule on her motion for visitation.

**{¶18}** Next, we note the trial court erroneously stated in its March 5, 2026 judgment entry that the agency "used reasonable efforts to reunify this family[.]" The agency was not required to make reasonable efforts at reunification at this stage in the proceedings.

**{¶19}** Pursuant to R.C. 2151.419(A):

(A)(1) Except as provided in division (A)(2) of this section, at any hearing . . . at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine

Case No. 26 HA 0003

whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. . .

(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:

. . .

(e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child . . .

{¶20} According to the statute, generally at a hearing where the court removes a child from their home, it shall determine whether the children's service agency has made reasonable efforts to prevent the removal. But R.C. 2151.419(A)(2)(e) provides an exception to this rule. If the parent from whom the child has been removed had their parental rights terminated with respect to a sibling of the child, then the court *shall* make a determination that the children's services agency is not required to make reasonable efforts to prevent the removal of the child from their home.

{¶21} Moreover, in *In re C.F.*, 2007-Ohio-1104, ¶ 43, the Ohio Supreme Court found that the reasonable efforts provision of R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed under R.C. 2151.413. The Court noted:

By its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33 or 2151.353. See R.C. 2151.419(A)(1). These sections involve adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody. Therefore, "[b]y

Case No. 26 HA 0003

its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414." *In re A.C.*, *supra*, 2004-Ohio-5531, ¶ 30.

*Id*. at ¶ 41. The Court went on to point out that this does not relieve children's services agencies of their duty to make reasonable efforts for reunification:

At various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification. . . However, the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody.

*Id*. at ¶ 42.

**{¶22}** In this case, the court made the R.C. 2151.419(A)(2)(e) finding in the adjudication judgment entry. As noted above, in its January 13, 2026 judgment entry, the trial court specifically found the agency "does not have to provide reasonable efforts toward [mother] due to the previous permanent removal of three of her children."

**{¶23}** Thus, the trial court misspoke when it stated that the agency used reasonable efforts to reunify in this case because this finding was not required at the permanent custody hearing. However, this error is harmless in light of the above.

**{¶24}** Mother next argues that both she and father should be allowed the opportunity to participate in a case plan, including counseling and parenting classes. And she claims the court erred in assuming father could not be a part of her or the child's life.

**{¶25}** Although mother makes this argument on behalf of father, father has not filed an appeal from the trial court's judgment and appellate counsel only represents mother on appeal. Thus, we cannot consider any arguments regarding father's termination of parental rights.

**{¶26}** Finally, mother argues the trial court's decision was against the manifest weight of the evidence. She points to her own testimony that she now recognizes that father harmed her other minor children and she plans to divorce father. She claims the court's decision in this case was based on her past when it should have looked to her

future, including factors such as: she receives social security income; she has housing; and she plans to divorce father.

{¶27} The Ohio Supreme Court set out the standard of review for manifest weight of the evidence in termination of parental rights cases in *In re Z.C.*, 2023-Ohio-4703, ¶ 14:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *[Eastley v. Volkman,* 2012-Ohio-2179,] at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id*. at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

{¶28} Pursuant to R.C. 2151.414(B)(2), at a hearing on a permanent custody motion:

> (2) With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest.

**{¶29}** Here, the court made a finding under R.C. 2151.414(E)(11). R.C. 2151.414(E) provides:

(E) In determining . . . whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence . . . that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

. . .

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, . . . and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

**{¶30}** Mother does not dispute that her rights were involuntarily terminated with respect to the child's three siblings.

**{¶31}** In considering the child's best interest, the trial court shall consider all relevant factors, including, but not limited to:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶32} In this case, the trial court made the following findings as to the best interest factors.

{¶33} As to R.C. 2151.414(D)(1)(a) and (b), the court found that the child is an infant and cannot express his wishes to the court. It noted that the GAL testified that the child is doing well with his foster family and is reaching all developmental milestones. The court found that the foster family is the only family the child has ever known and they are willing to adopt the child should that option become available to them.

{¶34} As to R.C. 2151.414(D)(1)(c), the court found that the child has been in the agency's temporary custody since October 23, 2025. It noted that kinship placement was explored and no one was willing to assume placement of the child. The court pointed out that mother disputed this but did not present any specific facts in support.

{¶35} As to R.C. 2151.414(D)(1)(d), the court found the child needs a legally secure permanent placement, which can only be accomplished through permanent custody. It noted that the child was taken from mother and father at his birth due to concerns from the hospital staff. It further explained father has a criminal history of sexual abuse of children and mother has had three children permanently removed from her custody due to father's abuse of one of these children. The court noted that mother failed to protect her children from father but she claimed she would protect this child from him. The court also pointed out that after she lost custody of her other children and while her appeal was pending, mother married father. Additionally, the court found that father lives in a house without running water and depends on mother, who allows him to come to her camper to shower. Finally, it noted that mother testified that she moved into a house in the last ten days.

{¶36} As to R.C. 2151.414(D)(1)(e), the court found that in 1997 father was convicted of rape, gross sexual imposition, and two counts of corruption of a minor and served a prison sentence. In 2003, father was convicted of gross sexual imposition with a person under age 13 and was again sentenced to prison. And as to the child's sibling, sexual abuse allegations were substantiated by the department of job and family services

but father was not criminally charged. Additionally, on Mach 24, 2023, mother had her parental rights involuntarily terminated with respect to the child's three siblings due to her inability to protect them from father.

**{¶37}** After analyzing the best interest factors, the court continued. It opined that mother "gave less than truthful testimony" and,

> this Court does not believe that [mother] has severed her relationship with [father] as she continues to receive mail at his house, was viewed together by a case worker on an unannounced home visit on February 20, 2026, and has been claiming for months to want to be divorced, but only recently stated that she started looking for an attorney to file on her behalf. There was evidence that [mother] married [father] during the appeal after she lost her other children. The Court does not believe that [mother] has separated herself from [father] and can protect this child.

**{¶38}** The court then found that the agency cannot reunify the child with mother due to her past three involuntary permanent removals of her other children and her failure to meet her burden of proof to establish that she has secured a permanent placement and adequate care for the child's health, welfare, and safety. And the court found it was in the child's best interest to grant permanent custody to the agency.

**{¶39}** The manifest weight of the evidence supports the trial court's findings.

**{¶40}** The GAL was the first witness. The GAL testified the child is healthy, interacting well, and feeding well with his foster family. (March 4, 2026 Tr. 6). She stated the foster family provides the child with a very warm environment and they are open to adopting the child. (March 4, 2026 Tr. 7).

**{¶41}** The GAL stated that mother has a strong desire to have the child back. (March 4, 2026 Tr. 7). Mother indicated to the GAL that she was willing to work on a case plan. (March 4, 2026 Tr. 7). But mother admitted to the GAL that she still interacts with father. (March 4, 2026 Tr. 7). Mother acknowledged that father abused other children and she knows now that was not right. (March 4, 2026 Tr. 8).

**{¶42}** The GAL opined that based on mother's and father's history and the fact that they are still married and have not followed through with any plans to divorce, it is in the child's best interest that the court grant permanent custody to the agency. (March 4,

2026 Tr. 8-9). The GAL also filed a report with this recommendation. (March 4, 2026 Tr. 9).

**{¶43}** When asked on cross examination if she had any actual knowledge of father residing at mother's residence, the GAL stated that father does not live there but mother allows him to spend time there and use her shower. (March 4, 2026 Tr. 10-11). She also acknowledged that mother has not been given an opportunity to visit with the child so she was not able to observe any interaction between them. (March 4, 2026 Tr. 11). And she agreed that if it could be guaranteed that father would have no contact with mother then permanent custody might not be necessary. (March 4, 2026 Tr. 12).

**{¶44}** Wanda Hamilton, the social services worker for this case, testified next. Hamilton stated that after the adjudication hearing (which was January 12, 2026), she went for an unscheduled visit at mother's home/camper (just the next month on February 20, 2026). (March 4, 2026 Tr. 16-17, 20). When Hamilton arrived she saw the door to mother's camper open and saw father stick his head out. (March 4, 2026 Tr. 17). He then quickly went back inside and mother came out. (March 4, 2026 Tr. 17). Hamilton asked mother to have father come outside. (March 4, 2026 Tr. 17). Mother told Hamilton she would have to visit with father at his house. (March 4, 2026 Tr. 17). Eventually, however, father came outside and Hamilton spoke with him. (March 4, 2026 Tr. 17-18). Hamilton stated that she did not go insider mother's camper because mother was very aggressive with her. (March 4, 2026 Tr. 18). Mother threatened Hamilton, swore at her, and told her to get off of the property. (March 4, 2026 Tr. 18). Consequently, Hamilton did not go into mother's camper because she did not feel safe. (March 4, 2026 Tr. 19).

**{¶45}** Mother was the final witness. Father did not testify. Mother opined it was in the child's best interest that he be placed with her. (March 4, 2026 Tr. 24). She acknowledged that she had three children removed from her in the past. (March 4, 2026 Tr. 24). When asked what she would do differently to ensure that the past problems would not occur with this child, mother stated that she goes to counseling and acknowledges the fact that father hurt her other child. (March 4, 2026 Tr. 24). She also stated that she is "working on" getting a divorce attorney. (March 4, 2026 Tr. 24).

**{¶46}** When asked why father is sometimes at her residence, mother stated that he comes over to shower. (March 4, 2026 Tr. 25). She said that if the child was placed

Case No. 26 HA 0003

with her, she would get a restraining order to keep father away. (March 4, 2026 Tr. 25). She also testified that she receives social security and that it would be sufficient for her to care for the child. (March 4, 2026 Tr. 25).

**{¶47}** On cross examination, mother testified that she was not married to father when she lost custody of her other children. (March 4, 2026 Tr. 26). Mother admitted that the case regarding her other children had been pending for several years. (March 4, 2026 Tr. 27). She had been having supervised visits with them three times a week and was working on having them placed back with her. (March 4, 2026 Tr. 27). However, she continued to have contact with father and was caught together with him. (March 4, 2026 Tr. 27-28). Subsequently, her parental rights were terminated. (March 4, 2026 Tr. 27-28). She appealed the termination, and while her appeal was pending, she married father. (March 4, 2026 Tr. 28). She claimed she was currently talking with Legal Aid to obtain a divorce attorney but had not yet filed for divorce. (Mach 4, 2026 Tr. 29).

**{¶48}** The above evidence supports the trial court's findings that: (1) it is in the child's best interest to grant permanent custody to the agency; and (2) mother has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

**{¶49}** The main focus of this matter is father's history of sexual abuse against children, most significantly the abuse against at least one of mother's other children, and mother's failure to protect her children from father. Despite what father did to her child, after her parental rights were terminated, mother married father and had another child, who is the subject of this case. And while mother claims she will divorce father and protect the child, her actions belie her statements. Father was found at mother's camper soon after the child was adjudicated dependent and just before the hearing for permanent custody. And despite this ongoing case, mother has not yet filed for a divorce from father. It is also interesting to point out that while mother claims she plans to divorce father and get a restraining order against him, she is still arguing in this appeal for him to be involved in the child's life.

Case No. 26 HA 0003

{¶50} Based on all of the above, the trial court's judgment granting the agency's motion for permanent custody and terminating mother's parental rights was supported by clear and convincing evidence and not against the manifest eight of the evidence.

{¶51} Accordingly, mother's sole assignment of error is without merit and is overruled.

{¶52} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Harrison County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**